IN RE the PATERNITY OF AMBER J.F.:

AMBER J.F., Petitioner-Respondent,

v.

RICHARD B., Respondent-Appellant.†

Court of Appeals

*No. 95–2656. Submitted on briefs September 6, 1996.—Decided October 17, 1996.*

(Also reported in 557 N.W.2d 84.)

†Petition to review denied.

511

For the respondent-appellant the cause was submitted on the briefs of *David J. O'Leary* of *O'Leary Law Office* of Janesville.

For the petitioner-respondent the cause was submitted on the brief of *John R. Dade* of *Dade & Brellenthin* of Whitewater.

Before Vergeront, Roggensack, and Deininger, JJ.

ROGGENSACK, J. Richard B. appeals an order reinstating a paternity action filed against him by Amber J.F. Richard asserts that res judicata and collateral estoppel[1] bar Amber's action, because an earlier paternity action brought by Amber's mother, Lynn M., resulted in a jury finding that Richard was not Amber's father. However, because Amber was not a

---

[1] Recently, the Wisconsin Supreme Court has clarified the doctrine of res judicata, which it renamed "claim preclusion," and the doctrine of collateral estoppel, which it renamed "issue preclusion." *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 549, 525 N.W.2d 723, 727 (1995). Therefore, in this opinion, we adopt the nomenclature established by the supreme court.

party to, nor in privity with the petitioner in, the earlier action, we conclude that claim preclusion does not apply. We also conclude that policies of fundamental fairness and due process proscribe the application of issue preclusion; therefore, we affirm the order of the trial court, allowing Amber to proceed.

## BACKGROUND

On December 6, 1984, Lynn, the mother of Amber, commenced a paternity action against Richard in Jefferson County, alleging Richard was the father of her unborn child. Richard contested the allegation of paternity and requested a jury trial on the issue.

A trial was held on October 14, 1985. Amber was not named as a party and no guardian ad litem or attorney was appointed to represent her interests. Blood tests were admitted into evidence, which indicated a 99.97% probability that Richard was Amber's father. At the trial's conclusion, the jury was asked, "Is the Respondent, Richard . . . the father of the Petitioner's child, Amber, born on the third day of March, 1985?" The jury unanimously answered that question "no." Thereafter, the action was dismissed.

On February 18, 1994, a second petition[2] alleging Richard's paternity of Amber was filed by Amber,

---

[2] The caption of the petition lists only Amber as a petitioner, but the petition itself states: "Now comes your petitioners, A.J.F., by John R. Dade, Guardian ad Litem for A.J.F., and Lynn M. . . . ., mother of A.J.F. who state as follows. . .", thereby drawing into question whether Lynn is seeking relief in a second action. Because the issue of Lynn's ability, or lack thereof, to proceed with a second action was not addressed by the parties in their briefs, we do not decide that question. *See Waushara County v. Graf*, 166 Wis. 2d 442, 451, 480 N.W.2d 16, 19 (1992).

through John R. Dade, her guardian ad litem. Based on the 1985 jury verdict and subsequent judgment, Richard moved to dismiss the petition, alleging claim preclusion and issue preclusion barred the action. On February 3, 1995, the trial court applied claim preclusion and dismissed the petition.

On May 22, 1995, the Court of Appeals for the State of Wisconsin decided *Chad M.G. v. Kenneth J.A.*, 194 Wis. 2d 690, 535 N.W.2d 97 (Ct. App. 1995), holding that a mother and a child do not stand in privity with one another for the purposes of a paternity action; and therefore, the doctrine of claim preclusion does not bar a subsequent action brought by a child who was not a party to the first proceeding. Thereafter, Amber moved the trial court for reconsideration. After briefing and oral argument, the trial court reversed its earlier decision and, based on *Chad M.G.*, reinstated the paternity action. Richard petitioned for leave to appeal this non-final order, pursuant to § 809.50, STATS., and we granted his petition.

## DISCUSSION

### Scope of Review.

Whether claim preclusion and/or issue preclusion apply to an undisputed set of facts is a question of law which this court reviews *de novo*, without deference to the trial court. Lindas v. Cady, 183 Wis. 2d 547, 552, 515 N.W.2d 458, 460 (1994).

### Claim Preclusion (Res Judicata).

515

Claim preclusion has as its underpinning policy considerations of fairness to the victor and judicial efficiency. *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 549, 525 N.W.2d 723, 727 (1995). It is " 'designed to draw a line between the meritorious claim on one hand and the vexatious, repetitious and needless claim on the other hand.' " *Id.* at 550, 525 N.W.2d at 727 (quoting *Purter v. Heckler*, 771 F.2d 682, 689-90 (3rd Cir. 1985)).

Claim preclusion establishes that a final judgment between parties is conclusive for all subsequent actions between those same parties, as to all matters which were, or which could have been, litigated in the proceeding from which the judgment arose. *Munchow v. Goding*, 198 Wis. 2d 609, 544 N.W.2d 218, 223 (Ct. App. 1995). Claim preclusion generally requires an identity of parties, but it can be applied to privies of parties as well. *Id.* (citing *Universal Die & Stampings, Inc. v. Justus*, 174 Wis. 2d 556, 562, 497 N.W.2d 797, 800 (Ct. App. 1993)).

In the case at hand, Amber seeks to prove that Richard is her father, just as Lynn did in the earlier action. However, privity is not established merely because mother and child are interested in the same question or in proving the same facts. In order to be in privity with a party to a judgment, one must have such absolute identity of interests that the party to the earlier action represented the same legal interest as the non-party to that first action. *Mayonia M.M. v. Keith N.*, 202 Wis. 2d 461, 551 N.W.2d 31, 34 (Ct. App. 1996); *Chad M.G.*, 194 Wis. 2d at 696, 535 N.W.2d at 99-100; *see also Marsh v. Rogers*, 659 N.E.2d 171 (Ind.

Ct. App. 1995); *B.M.L. v. Cooper*, 919 S.W.2d 855 (Tx. Ct. App. 1996).

Lynn sought a determination of paternity to receive child support and expenses for Amber's birth. While Amber does have an interest in child support, that is not the limit of the potential financial benefits which could accrue to her if Richard were adjudicated as her father. For example, she may benefit from inheritance rights, social security survivor benefits, employee death benefits, life insurance proceeds and health insurance. Amber also has an interest in establishing familial bonds, gaining knowledge of Richard's medical history and an awareness of his cultural heritage. Lynn was not Amber's privy in the earlier action. Therefore, we conclude that under the holding of *Chad M.G.* claim preclusion does not bar Amber's paternity action because there was neither an identity of parties in the prior action, nor privity bottomed on an absolute identity of interests between Amber and her mother.

**Issue Preclusion (Collateral Estoppel).**

Issue preclusion "has the dual purpose of protecting litigants from the burden of relitigating an identical issue, in certain circumstances, and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). As a threshold matter, issue preclusion, unlike claim preclusion, requires more than a judgment on the merits. It requires actual litigation of an issue necessary to the outcome of the first action. *Northern States Power*, 189 Wis. 2d at 550, 525 N.W.2d at 727. Therefore, judgments based on pleas of no

517

contest, which pass directly to disposition and avoid adjudication of contested issues, do not prevent future litigations of those same issues in other lawsuits. *Crowall v. Heritage Mut. Ins. Co.*, 118 Wis. 2d 120, 122, n.2, 346 N.W.2d 327, 329, n.2 (Ct. App. 1984). Additionally, issue preclusion can prevent relitigation of issues actually litigated and determined in a prior lawsuit, even if the cause of action in the second lawsuit is different from the first. *Id.* at 121, n.1, 346 N.W.2d at 329, n.1. Throughout the evolution of issue preclusion, the burden of establishing that it should be applied in a given instance is on the party seeking its benefit. *Flowers v. DHSS*, 81 Wis. 2d 376, 389, 260 N.W.2d 727, 734-35 (1978).

Initially, issue preclusion was applied only when there was an identity of parties, all of whom were mutually bound by the first court's judgment. 31 A.L.R. 3rd 1044, § 1(b) at 1047-49 (1970). However, more recent decisions have discarded the mutuality requirement and adopted a more flexible approach based on a "fundamental fairness" analysis. *Northern States Power*, 189 Wis. 2d at 551, 525 N.W.2d at 727; *see also Blonder-Tongue Lab., Inc. v. University of Ill. Found.*, 402 U.S. 313 (1971). Therefore, unlike claim preclusion, issue preclusion does not require an identity of parties. *Michelle T. v. Crozier*, 173 Wis. 2d 681, 687, 495 N.W.2d 327, 330 (1993).

Issue preclusion is now applied in contexts where only one party to the current action was a party to the prior action. It may be applied offensively or defensively, against one who was a party to the earlier action. *See Michelle T.*, 173 Wis. 2d at 696, 495 N.W.2d at 333 (applying issue preclusion offensively against

the defendant to prevent relitigating the fact of defendant's sexual assault of the plaintiff in a civil action, when that fact had been adjudicated against the defendant in a prior criminal action) *and Crowall*, 118 Wis. 2d at 122, 346 N.W.2d at 329 (applying issue preclusion defensively to preclude an insured from relitigating facts in an insurance claim which had already been determined against him, in a prior criminal action).

A recent case of this court has also applied issue preclusion defensively against a non-party, where the nexus between the interest sought to be vindicated by the former party was extremely close to that of the non-party, and only financial interests were at stake. *Jensen v. Milwaukee Mut. Ins. Co.*, No. 95-2042 (Wis. Ct. App. Aug. 28, 1996). In *Jensen*, after analyzing five fairness factors, we allowed the defendant to use issue preclusion against a plaintiff who had not been a party to the prior action in which the defendant had been found not causally negligent in a traffic context. However, in *Mayonia*, we held that due process considerations prevented the use of issue preclusion by a respondent in a paternity action brought by a child, even though the respondent had been previously found not to be the father of the child in an action brought by the child's mother. These holdings, while producing different results, are not contradictory. Application of the fundamental fairness concerns reflected in the five-part test identified by the Wisconsin Supreme Court in *Michelle T.* and applied by this court in *Jensen*, focuses a court's consideration on the specific factors presented by each case.

■

*Michelle T.* sets forth the test as follows:

(1) could the party against whom preclusion is sought, as a matter of law, have obtained a review of the judgment;

(2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law;

(3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue;

(4) have the burdens of persuasion shifted such that a party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or

(5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

*Michelle T.* at 689, 495 N.W.2d at 330-31.

This five-part fundamental fairness test is bottomed in guarantees of due process which require that a person must have had a fair opportunity procedurally, substantively and evidentially to pursue the claim before a second litigation will be precluded. *Michelle T.*, 173 Wis. 2d at 695, 495 N.W.2d at 333; *Blonder-Tongue*, 402 U.S. at 333. The weight given to each factor and the ultimate determination of whether issue preclusion should be applied must be done on a case-by-case basis. *Michelle T.*, 173 Wis. 2d at 692 and 495 N.W.2d at 332.

In the case at hand, application of the fundamental fairness test results in our concluding that the doctrine of issue preclusion does not bar Amber from proceeding with her claim, just as this court concluded in *Mayonia*. First, Amber could not have obtained a review of the

1985 judgment. She was not a party; no guardian ad litem or attorney was appointed to represent her; and as a child, she did not possess the ability to hire a representative who could have intervened to protect her interests. This factor favors allowing Amber to proceed.

Second, what is at issue here is a finding of fact made by a jury in 1985. A finding in regard to the same fact, i.e., whether Richard is Amber's father, will be required in the present action. However, the law bearing on that finding changed with the enactment of § 767.48(1m), STATS.,[3] which presumes that if the blood tests show the putative father is not excluded and that there is a statistical probability of paternity of 99.0% or greater, the putative father is rebuttably presumed to be the child's father. Presumably this change in the law will result in a different jury instruction than was used in 1985 because the statistical probability that Richard is Amber's father is 99.97% and he apparently was not excluded as a potential father in 1985. This factor also favors allowing Amber to proceed.

Third, there has been no showing that the quality or extensiveness of the first trial was defective in any way. The question of whether Amber was fathered by Richard was tried before a jury and the jury found, as a fact, that he was not her father. This factor favors applying issue preclusion to bar Amber's attempt to relitigate a fact already determined.

Fourth, the burden of proof is the same now, as it was in the earlier paternity action. This factor favors preclusion of a second action.

---

[3] 1987 Act 27, § 2137s, eff. Oct. 1, 1987.

Fifth, public policies, grounded in the guaranties of due process,[4] which the Fifth and Fourteenth Amendments of the United States Constitution require, bear on Amber's rights. However, Amber did not receive procedural, substantive or evidentiary protections for her interests, in the first trial. She was not a party; she had no legal representation to protect her interests; and her mother's interests were not identical to her own. It would be fundamentally unfair to forever preclude her from an opportunity to legally establish her paternity. While this court is mindful that a second trial will cause expense and inconvenience to Richard and use additional judicial resources which are always at a premium, Amber's interest in having the opportunity to identify her father far outweighs those inconveniences to Richard and the State. Therefore, this factor also favors allowing Amber to proceed.

Because we conclude that the burden on Richard and the State of proceeding with a second action involves money and time, but the potential benefits to Amber, if she is successful, will affect her personal status throughout her lifetime, we hold that fundamental fairness bars the use of issue preclusion to prevent Amber from proceeding. The order of the trial court reinstating Amber's claim to determine whether Richard is her father is affirmed.

---

[4] Due process requires that a child be given notice of, and an opportunity to be heard at, any proceeding which determines the child's status vis-a-vis the alleged father. *In Re Cogan's Estate*, 267 Wis. 20, 26, 64 N.W.2d 454, 457 (1954); *see also* RESTATEMENT (SECOND) OF JUDGMENTS, § 31(2)(a).

## CONCLUSION

*By the Court.*—Order affirmed.