HRUZ, J.
*269 *95 ¶1 Frank Hull appeals a judgment dismissing his negligence claim against John Glewwe and Glewwe's insurer, State Farm Fire and Casualty Company. Hull and Glewwe were both injured in an accident that occurred during a roofing project at Hull's home. In a prior lawsuit, Glewwe had pursued claims for damages arising out of the accident directly against Hull's liability insurer, Unitrin Auto and Home Insurance Company, without Hull being made a party to that action. That case terminated in a settlement agreement under which Glewwe released his claims against Hull and Unitrin in exchange for the payment of a designated sum.
¶2 Hull subsequently filed this negligence action against Glewwe and State Farm. The case was *96 dismissed based upon the circuit court's conclusion that Hull was required to assert his affirmative claim for damages in the earlier lawsuit, even though he was not a party to that action. The issue presented in this appeal is whether claim preclusion and the common law compulsory counterclaim rule operate so as to bar an injured person's negligence claim against an alleged tortfeasor, when prior litigation arising out of the same accident has been settled by that injured person's insurer without that injured person having been a party to the prior litigation.
¶3 We conclude that, under the circumstances present in this case, Hull is not precluded from pursuing a negligence claim against Glewwe and State Farm. Because Hull was not a party to the prior action, he could only be bound to the outcome in the earlier case if he was in privity with his insurer, Unitrin. Privity, in turn, requires a sufficient alignment of interests that is lacking in this case. Specifically, although Hull's and Unitrin's interests aligned for purposes of defending against the claims in the prior lawsuit, their interests did not align for purposes of advancing Hull's affirmative claim for relief. Accordingly, we reverse the grant of summary judgment and remand for further proceedings.
BACKGROUND
¶4 This appeal arises from an accident that occurred on June 30, 2015. According to the complaint, Glewwe, a contractor, was installing metal roofing panels on Hull's home. On the date of the accident, Glewwe asked for Hull's help getting some roof measurements. Glewwe had screwed a board into the home's fascia to support a "treadway," which is a wooden ladder-like structure laid across the roof to *97 allow a person to walk on the roof without damaging the panels. Hull alleged that Glewwe failed to adequately secure the support board to the home, causing both him and Glewwe to fall from the roof. Both individuals sustained injuries in the fall.
¶5 In May 2016, Glewwe and his wife filed a direct action lawsuit (hereinafter, Glewwe I ) in which they alleged negligence and Safe Place Act claims against Hull's homeowners' insurer, Unitrin Auto and Home Insurance Company.[1] Unitrin responded *270 by raising several affirmative defenses, including that the claims asserted were barred "in whole or in part by Wisconsin's comparative fault statute."
¶6 Hull was not named as a party in Glewwe I . He did not participate in that litigation, except that he testified as a witness in a deposition. As a result, Hull did not file a counterclaim for his own damages against Glewwe or State Farm in Glewwe I , and his affirmative claims were not directly at issue in that litigation.[2] Unitrin expressly advised Hull that its duties were limited to the defense of the claim against him and it would not be representing his interests with respect to any potential claims he might have against Glewwe.
¶7 The parties in Glewwe I ultimately entered into a settlement agreement that resolved the litigation. In exchange for the payment of a specified sum, Glewwe released Hull and Unitrin from any liability for all injuries he sustained in the accident. The release further stated that the payment "is not to be *98 construed as an admission of liability and is a compromise of a doubtful and disputed claim." Although the release resolved Glewwe's claims against Unitrin, the parties explicitly stated that their intentions were to "resolve a questionable claim by plaintiffs," and the release provided that "the payment to plaintiff is a significant compromise due to various factors, including issues of liability, damages, extent of care and treatment, which does not provide full compensation." Based upon the parties' stipulation, the circuit court signed an order for judgment dismissing Glewwe's claims against Unitrin "with prejudice" and "on the merits."
¶8 It is undisputed that Hull had no input in the drafting or execution of the Glewwe I settlement agreement, he was not consulted with respect to any matters regarding the settlement, and he did not know the case had been settled until after the fact. Unitrin has maintained, without challenge from Hull, that it had the authority to settle Glewwe's claims against it on its own, without consulting Hull or receiving his approval.
¶9 Hull filed the present negligence action just weeks after Glewwe I 's dismissal. Glewwe and State Farm filed a joint answer and a motion for summary judgment.[3] Glewwe contended that Hull's action raised the same comparative negligence issues that had previously been decided by stipulation in Glewwe I and that permitting Hull to recover on his negligence claim would undermine the final judgment in that case. Glewwe also argued that Hull was bound by the prior *99 lawsuit's outcome because he was in privity with his insurer, Unitrin. Accordingly, Glewwe asserted that as a function of the doctrine of claim preclusion and the common law compulsory counterclaim rule, Hull was required, but failed, to file his negligence claim as a counterclaim in Glewwe I , and his claims were therefore barred. Glewwe also asserted that permitting Hull to maintain his separate action would be contrary to the purposes of Wisconsin's direct action statute, WIS. STAT. § 632.24 (2017-18).[4] *271 ¶10 The circuit court agreed with Glewwe and granted his summary judgment motion. It first concluded that the elements of claim preclusion had been satisfied. The court ruled that, under Parsons ex rel. Cabaniss v. American Family Insurance Co. , 2007 WI App 211, 305 Wis. 2d 630, 740 N.W.2d 399, an insured stands in privity with the insurer because there is but "one wrong and one cause of action." The court also determined that the causes of action were identical in that both lawsuits arose out of a common nucleus of operative facts. Finally, the court concluded that a stipulated settlement that dismisses a claim on its merits operates as a final judgment for purposes of claim preclusion.
¶11 The circuit court also determined that permitting Hull's action to go forward would violate Wisconsin's common law compulsory counterclaim rule. It concluded that any recovery for Hull in this action would leave Glewwe at a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations and would impair the rights he established in the first action as he ... may not be able to assert Mr. Hull's *100 negligence as a defense and would not be free to argue [the amount of his damages]," potentially forcing him to return a substantial portion of his recovery from the previous lawsuit. (Internal quotation marks omitted.) The court concluded that Hull was barred from raising his present claim regardless of whether Unitrin refused to represent him in making a counterclaim, and it remarked that Hull should have retained private counsel to intervene and join in Glewwe I . Hull now appeals.[5]
DISCUSSION
¶12 We review a grant of summary judgment de novo. Tews v. NHI, LLC , 2010 WI 137, ¶40, 330 Wis. 2d 389, 793 N.W.2d 860. Summary judgment must be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). In this case, no party argues there is a genuine dispute as to any material fact. Rather, the sole question presented is one of law: whether, under the undisputed facts present here, Hull's negligence claim is barred by the doctrine of claim preclusion and the common law compulsory counterclaim rule.
¶13 Glewwe argues that if Hull wished to pursue his affirmative negligence claim, he was required to file it as a counterclaim in the earlier lawsuit, in which the issue of comparative negligence was raised. As an introductory matter, we note that Hull was not named as a party in the earlier lawsuit. Glewwe sued *101 Unitrin, Hull's insurer, pursuant to Wisconsin's direct action statute, WIS. STAT. § 632.24, which makes a liability insurer directly liable to an injured party in an amount not to exceed its policy limits.[6] It has long been established that, pursuant to this statutory language, an insured is not a necessary party to an action between the injured party and the alleged tortfeasor's insurer. Loy v. Bunderson , 107 Wis. 2d 400, 421, 320 N.W.2d 175 (1982). Thus, *272 although Glewwe urges us to apply the common law compulsory counterclaim rule to bar Hull's claim, what he truly advocates is a new rule of mandatory intervention.
¶14 In that sense, Glewwe asks us to take the law a step further than our supreme court when it announced the common law compulsory counterclaim rule in A.B.C.G. Enterprises v. First Bank Southeast, N.A. , 184 Wis. 2d 465, 515 N.W.2d 904 (1994). In that case, a mortgagee, First Bank, received default judgments in several actions seeking to foreclose upon A.B.C.G.'s interests in various properties. Id. , at 480, 515 N.W.2d 904. Later, A.B.C.G. brought an action against First Bank, alleging that a variety of wrongful conduct on First Bank's part had led it to default on its mortgage agreements and, consequently, to lose its properties in foreclosure. Id. , at 471-72, 515 N.W.2d 904. The circuit court dismissed A.B.C.G.'s claims on summary judgment, concluding *102 they were barred under the doctrine of res judicata by the prior default judgments entered in the foreclosure actions. Id. , at 472, 515 N.W.2d 904.
¶15 An understanding of the principles of res judicata-which Wisconsin courts now refer to as claim preclusion, see Northern States Power Co. v. Bugher , 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995) -is vital to comprehending the parameters of the common law compulsory counterclaim rule announced in A.B.C.G. Enterprises and, consequently, to the circuit court's determination in this case. Claim preclusion "provides that a final judgment 'is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings.' " A.B.C.G. Enters. , 184 Wis. 2d at 472-73, 515 N.W.2d 904 (quoting DePratt v. West Bend Mut. Ins. Co. , 113 Wis. 2d 306, 310, 334 N.W.2d 883 (1983) ). "The elements of claim preclusion are: '(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent jurisdiction.' " Wickenhauser v. Lehtinen , 2007 WI 82, ¶22, 302 Wis. 2d 41, 734 N.W.2d 855 (quoting Northern States Power Co. , 189 Wis. 2d at 551, 525 N.W.2d 723 ).
¶16 A.B.C.G. asserted that applying claim preclusion to bar its claims against First Bank violated WIS. STAT. § 802.07(1), which governs counterclaims. See A.B.C.G. Enters. , 184 Wis. 2d at 473, 515 N.W.2d 904. Generally, counterclaims are permissive in Wisconsin, and the defendant may elect to assert them in the original action or bring them later in a separate action. See id. , at 476, 515 N.W.2d 904. "[T]he general rule in Wisconsin is that where *103 a defendant may interpose a counterclaim but fails to do so, he is not precluded from maintaining a subsequent action on that claim." Id. (citing RESTATEMENT (SECOND) OF JUDGMENTS § 22(1) ( AM. LAW INST. 1982) ). This rule is premised on the belief that "notions of fairness require that a defendant be given his day in court when and where he sees fit." Id. (citing RESTATEMENT (SECOND) OF JUDGMENTS § 22(1) cmt. a ( AM. LAW INST. 1982)).
¶17 As Hull correctly argues, A.B.C.G. Enterprises established a narrow, common law exception to the permissive counterclaim rule as a means of reconciling the tension between that rule and claim preclusion. A counterclaim is compulsory only if claim preclusion would otherwise apply and "a favorable judgment in the second action would nullify the judgment in the original action or impair rights established in the initial action." A.B.C.G. Enters. , 184 Wis. 2d at 476-77, 480-81, 515 N.W.2d 904 ; see also *273 Menard, Inc. v. Liteway Lighting Prods. , 2005 WI 98, ¶27, 282 Wis. 2d 582, 698 N.W.2d 738. After A.B.C.G. Enterprises , claim preclusion may bar a plaintiff from asserting claims in a subsequent action that the party failed to assert in a previous action in which it was a defendant. Menard, Inc. , 282 Wis. 2d 582, ¶28, 698 N.W.2d 738. Notably, here, Hull was not a defendant in the previous action, and none of the primary issues in A.B.C.G. Enterprises involved whether the parties were identical as between the initial foreclosure and A.B.C.G.'s subsequent lawsuit; A.B.C.G. conceded there was an identity of parties between the two cases. A.B.C.G. Enters. , 184 Wis. 2d at 480, 515 N.W.2d 904. *104 ¶18 The issue of whether there is an identity of parties to the first and second actions is paramount in this case. Again, it is undisputed that Hull was not a party to the previous litigation. Accordingly, Hull could be bound by the judgment in the prior action only if he was in privity with his insurer, Unitrin, for purposes of advancing his affirmative negligence claim. See Northern States Power Co. , 189 Wis. 2d at 551, 525 N.W.2d 723 (observing that the parties between the two lawsuits must either be the same or in privity). The burden of proving claim preclusion is on the party asserting its applicability, and the issue of privity presents a question of law that this court reviews de novo. Pasko v. City of Milwaukee , 2002 WI 33, ¶16, 252 Wis. 2d 1, 643 N.W.2d 72.
¶19 "Privity exists when a person is so identified in interest with a party to a former litigation that he or she represents precisely the same legal right in respect to the subject matter involved." Id. A contractual relationship alone is not determinative of privity. Id. , ¶18. Instead, "privity compares the interests of a party to a first action with a nonparty to determine whether the interests of the nonparty were represented in the first action." Id.
¶20 The parties sharply disagree on the results that this comparative exercise produces in this case. The circuit court accepted Glewwe's argument that Hull and Unitrin were privies because an insurer's liability under the direct action statute is derivative of the insured's. See Koscielak v. Stockbridge-Munsee Cmty. , 2012 WI App 30, ¶21, 340 Wis. 2d 409, 811 N.W.2d 451 ("In other words, an insurer is not liable unless the insured is."). Glewwe reasons that Unitrin's and Hull's interests "logically aligned" in Glewwe I *105 because Unitrin had "every motivation" to vigorously dispute its insured's liability, including by invoking comparative negligence principles to assert that Glewwe's percentage of causal responsibility for the accident exceeded Hull's.
¶21 This identity of interests in the general question of negligence is insufficient to establish privity between Hull and Unitrin for purposes of advancing Hull's affirmative claim for relief. As an initial matter, there is significant tension in Glewwe's assertions that Hull was in privity with Unitrin for purposes of recovering for his own injuries, but that he would, nonetheless, have to retain his own attorney, intervene in the action, and prosecute his own claim to vindicate his rights. If Hull's interests in his affirmative claim for relief were adequately represented by Unitrin in the earlier action, one would expect his intervention would not be necessary.
¶22 In any event, Glewwe generally concedes that Unitrin's policy of insurance, as is true of most liability policies, only required it to defend and indemnify Hull for any damages resulting from his negligence covered by the policy. See Maxwell v. Hartford Union High Sch. Dist. , 2012 WI 58, ¶53, 341 Wis. 2d 238, 814 N.W.2d 484. As a result, an insurer generally *274 "maintains the right to control the defense of the insured, settle a claim on its behalf, and pay a claim within the policy limits." Bosco v. LIRC , 2004 WI 77, ¶61, 272 Wis. 2d 586, 681 N.W.2d 157. During the defense of a claim, the insured usually acts at the direction of the insurer. Id.
¶23 Here, it is undisputed that these duties did not encompass prosecuting Hull's affirmative claim for relief. Unitrin's apparent interest was to dispose of the *106 litigation against it as economically as possible. Cf. Roehl Transp., Inc. v. Liberty Mut. Ins. Co. , 2010 WI 49, ¶54, 325 Wis. 2d 56, 784 N.W.2d 542 (observing the insurer had an "apparent interest in settling claims below a deductible to minimize its own costs"). Unitrin was not interested in prosecuting Hull's affirmative negligence claim, and it explicitly told him as much in Glewwe I after he requested that it do so. Tasked merely with the defense of the claims against it, Unitrin had the ability to investigate and settle the matter without Hull's direct participation. See Roehl Transp. , 325 Wis. 2d 56, ¶50, 784 N.W.2d 542 (noting that an insured "has bartered away its rights to control settlement to the insurance company and must depend on the insurance company to investigate and settle the matter properly"). Hull, in fact, did not participate in the settlement negotiations, and he did not learn of the settlement until after it had been executed.
¶24 On the other hand, Hull's interest was in maximizing his recovery by establishing that Glewwe's percentage of causal fault for Hull's injuries was as high as possible. Comparative negligence principles play a key role in our analysis. A "successful" defense from Unitrin's perspective generally involved either economically settling the case prior to trial or establishing at trial that Glewwe could not recover because he was at least fifty-one percent causally negligent. Meanwhile, Wisconsin law generally permits an injured party to recover damages as long as his or her negligence is not greater than the negligence of the alleged tortfeasor. See WIS. STAT. § 895.045(1). Thus, from Hull's perspective, the bare minimum he needed to do to prevail on his own claim was to establish that Glewwe was at least fifty percent causally negligent for *107 the accident. As a practical matter, Hull and Unitrin may have used much of the same evidence to achieve their goals within the comparative negligence setting, but their goals were materially different.
¶25 Longstanding case law in Wisconsin recognizes this distinction between these interests on the part of the insurer and the insured. For example, in Towne Realty, Inc. v. Zurich Insurance Co. , 201 Wis. 2d 260, 548 N.W.2d 64 (1996), the supreme court held that a liability insurer's breach of its duty to defend did not compel it to pay as damages amounts the insured incurred in prosecuting a counterclaim. Id. , at 272, 548 N.W.2d 64. The insurer's obligation is to defend the claim against the insured, not to seek a recovery on the insured's behalf for injuries he or she has sustained. Id. "At risk of stating the obvious, a countersuit initiated by the insured cannot logically be a suit seeking damages from the insured." Id. , at 272-73, 548 N.W.2d 64.
¶26 Our supreme court has also considered the divergent nature of the insurer's and the insured's interests in a situation similar to the one presented here. In Birkholz v. Cheese Makers Mutual Casualty Co. , 274 Wis. 190, 79 N.W.2d 665 (1956), there was a two-car collision involving a Birkholz Brothers' vehicle. Id. at 190, 79 N.W.2d 665. Birkholz Brothers' liability insurer settled with the other driver, McNulty, and obtained a written release of all of McNulty's claims against Birkholz *275 Brothers and its insurer.[7] Id. at 190-91, 79 N.W.2d 665. As here, there was no clause in the release that specifically *108 excluded Birkholz Brothers' potential cause of action against McNulty from the scope of the agreement, but the agreement denied all liability on the part of Birkholz Brothers. Id. at 191, 79 N.W.2d 665.
¶27 When Birkholz Brothers subsequently commenced an action against McNulty for damages, McNulty asserted that he was entitled to summary judgment. Id. McNulty argued that Birkholz Brothers was bound by the earlier determination because "participation in settlement by the agent is participation by the principal." Id. Our supreme court rejected this argument, concluding that "[t]he authority of the insurer to make settlements is limited to the insurer's own resources and it is not empowered by the policy, without the assured's knowledge and consent, to contribute toward the settlement either cash or other property, such as causes of action, belonging to the assured." Id. at 192, 79 N.W.2d 665.
¶28 Birkholz was based upon an earlier ruling in Wm. H. Heinemann Creameries, Inc. v. Milwaukee Automobile Insurance Co. , 270 Wis. 443, 71 N.W.2d 395 (1955), another case on which Hull relies. There, Tronca sued Heinemann following an automobile accident involving the parties' trucks. Id. at 445, 71 N.W.2d 395. Heinemann's liability insurer assumed defense of the action and settled Tronca's claim without an admission of liability. Id. at 445-46, 71 N.W.2d 395. Heinemann and his insurer then sued Tronca for damages to Heinemann's truck, and Tronca obtained dismissal of the action based upon the earlier settlement. Id. On appeal, our supreme court concluded Heinemann was not barred by claim preclusion from pursuing his property damage claim because he was under no obligation to assert that claim as a counterclaim in the original action. Id. at 448-50, 71 N.W.2d 395.
*109 ¶29 While Heinemann Creameries is a strong case for Hull, it seems to run contrary to our supreme court's later decision adopting the common law compulsory counterclaim rule in A.B.C.G. Enterprises .[8] See A.B.C.G. Enters. , 184 Wis. 2d at 477, 515 N.W.2d 904. Nonetheless, even assuming that A.B.C.G. Enterprises effectively abrogated Heinemann Creameries , both of those cases are factually distinguishable from the present case and Birkholz . In both Heinemann Creameries and A.B.C.G. Enterprises , the plaintiff in the second lawsuit was a defendant in the first lawsuit. See A.B.C.G. Enters. , 184 Wis. 2d at 471, 515 N.W.2d 904 ; Heinemann Creameries , 270 Wis. at 445-46, 71 N.W.2d 395. Because the insureds were present in the first lawsuit, there was no need to inquire *276 into whether their interests were aligned with those of their insurers. By contrast, both the present case and Birkholz present a scenario in which the insured was absent when the insurer entered into a settlement that disposed of a derivative claim against the insurer based upon the insured's conduct. Accordingly, Birkholz is the more appropriate authority to apply here, and it is consistent with the distinction between the insurer's *110 interest in defending the insured and the insured's interest in prosecuting an affirmative claim for relief.
¶30 Glewwe nonetheless argues that the "sufficiency of Unitrin's representation is further evidenced by the fact that an insurer and its insured stand in privity with respect to settlement." Glewwe primarily relies on Parsons in making this argument. There, the minor Parsons was injured in an automobile accident and, together with her parents, sued the insurer of the driver of the car in which she was riding, as well as the insurer of another of the car's passengers. Parsons , 305 Wis. 2d 630, ¶¶2-3, 740 N.W.2d 399. Neither the driver nor the other passenger, or their parents, were named defendants in that lawsuit. Id. , ¶3. After Parsons reached a settlement with the passenger's insurer, she amended her complaint to add claims against the passenger's parents. Id. , ¶6. The passenger's insurer declined to defend the parents and sought a ruling that the payment to Parsons discharged the liability of both it and the parents. Id. , ¶7.
¶31 On appeal, we concluded that even though the passenger's parents were not present in the action until after the settlement had been reached, the settlement also bound them because the "insured stands in privity with the insurer." Id. , ¶¶12-13. This conclusion does not help Glewwe, however, because it is fully consistent with the principles we have articulated above. Specifically, both the insured and the insurer were united in the defense of Parson's claims against them. In a Parsons situation, privity between the insured and the insurer arises by virtue of the combination of derivative liability, the insurance contract, and the direct action statute. However, the question here is not whether Hull's and Unitrin's interests were aligned for purposes of defending against Glewwe's *111 claims; they clearly were. In this case, Unitrin's interests were not aligned with Hull's as Hull's interests concerned the advancement of a cause of action for his own injuries.
¶32 Admittedly, Hull and Unitrin, for different reasons, each had a generalized interest in advocating that Glewwe was causally negligent for the accident that produced both Hull's and Glewwe's injuries. However, privity is not established merely because the two parties "are interested in the same question or in proving the same facts." Amber J.F. v. Richard B. , 205 Wis. 2d 510, 516, 557 N.W.2d 84 (Ct. App. 1996). "In order to be in privity with a party to a judgment, one must have such absolute identity of interests that the party to the earlier action represented the same legal interest as the non-party to that first action." Id.
¶33 We have concluded, for example, that in a two-car accident, privity does not exist merely because different parties are interested in the same question of comparative negligence. Muchow v. Goding , 198 Wis. 2d 609, 622-23, 544 N.W.2d 218 (Ct. App. 1995). In Muchow , Goding, the driver of one of the vehicles, filed a lawsuit against his insurer and the insurer of the other driver, Dairyland. Id. , at 617-18, 544 N.W.2d 218. Dairyland, in turn, filed a third-party complaint against the estate of a passenger who had died in the accident, seeking a determination as to whom it should pay its policy proceeds.
*277 Id. , at 618, 544 N.W.2d 218. Dairyland ultimately entered into a settlement with the estate for half of the insurance proceeds, and the estate then commenced a separate action against Goding and his insurer, who argued the second lawsuit should be dismissed as claim precluded by the earlier settlement between the estate and Dairyland. Id. , at 619-20, 544 N.W.2d 218.
*112 ¶34 We rejected that argument and concluded that claim preclusion did not protect Goding or his insurer because they were not in privity with the estate or Dairyland in the earlier third-party action. Id. , at 622-23, 544 N.W.2d 218. Moreover, we stated that it was "immaterial" that Goding and his insurer could have been brought into the prior action and that, if they had been made parties to it, "various matters pertinent to defendants might have been litigated in that proceeding." Id. , at 623, 544 N.W.2d 218. The upshot of Muchow is that even when an insurer effectively concedes liability to a third party on behalf of an insured, that concession is not binding in a subsequent action by the third party against a different alleged tortfeasor, even though both are interested in the ultimate question regarding the apportionment of liability.
¶35 Even beyond the comparative negligence context, case law demonstrates that there must be a sufficiently close alignment of interests for parties to be deemed in privity with one another.[9] For example, in Amber J.F. , we concluded that a mother and daughter who were both interested in proving the paternity of a putative father were not in privity because of the *113 additional financial interests of the daughter beyond the mother's interest in seeking child support. Amber J.F. , 205 Wis. 2d at 517, 557 N.W.2d 84.
¶36 Pasko also illustrates these privity concepts. In Pasko , the question was whether certain police officers who had litigated a previous wage lawsuit were in privity with the Milwaukee Police Association (the officers' collective bargaining agent) in a second lawsuit relating to the same general allegations of underpayment. Pasko , 252 Wis. 2d 1, ¶¶2-3, 7-8, 10, 643 N.W.2d 72. Despite the individual officers and the police association having a contractual arrangement, the supreme court held that the parties were not in privity because the individual officers in the first suit were merely seeking back pay and other relief for themselves for performing duties associated with unfilled positions, while the association was seeking a determination on behalf of all of its members that the law required the City of Milwaukee to promote qualified officers to those positions. Id. , ¶¶20-21. Although there was significant overlap in their interests, they were not identical. See id. , ¶¶19-21.
¶37 Glewwe objects that "[i]njustice would result" if Hull was not bound by Glewwe's settlement with Unitrin, as Hull obtained the benefit of the release. Glewwe also argues that the settlement agreement leaves him "weaponless" because he "possibly cannot dispute liability [in this action] based on the terms of the release." We perceive no unfairness to Glewwe in this instance. For the reasons we have identified, *278 there is no injustice in holding that Hull and Unitrin were in privity as to the defense of Glewwe's claims, but not as to Hull's affirmative claim for his own injuries. If Glewwe wished to bind Hull to the *114 disposition in the first lawsuit for purposes of Hull's own claim, Glewwe merely needed to name Hull as a defendant (the direct action statute does not preclude him from doing so). Glewwe also could have obtained Hull's agreement to be bound by the settlement with his insurer or obtained a mutual release of his claims from him (nonparties to a lawsuit can so agree). Additionally, the terms of the release do not appear to justify Glewwe's concern that he is unable to adequately defend against Hull's claim, and Hull stipulated at oral argument that the release permitted Glewwe to dispute in the current lawsuit the degree of his negligence.[10] To the contrary, any fairness considerations in this case appear to solely benefit Hull, as "claim preclusion should be applied so as not to deprive a party of a full and fair determination of an issue." Pasko , 252 Wis. 2d 1, ¶22, 643 N.W.2d 72.
¶38 Glewwe alternatively argues that permitting Hull's action to proceed contravenes the purposes of the direct action statute. The direct action statute generally endeavors to save litigation and reduce expense by determining the rights of all parties in a single action involving the insurance carrier, to expedite the final settlement of litigation and payment to the injured person, and to place the burden on the insurer to pay *115 damages sustained by a person as a result of the insured's causal negligence. Estate of Otto v. Physicians Ins. Co. of Wis. , 2008 WI 78, ¶36 n.21, 311 Wis. 2d 84, 751 N.W.2d 805 (citing Decade's Monthly Income & Appreciation Fund v. Whyte & Hirschboeck, S.C. , 173 Wis. 2d 665, 675, 495 N.W.2d 335 (1993) ). Glewwe asserts that Hull's position produces duplicative litigation and undermines the finality of settlements.
¶39 Glewwe's concerns are overstated, and there are equally good policy reasons for not applying claim preclusion in this instance. The settlement agreement released only Glewwe's claims against Hull in exchange for the payment of a monetary sum; Glewwe did not bargain for or receive a mutual release. Moreover, Hull observes that it would have been much more difficult to obtain a settlement in Glewwe I had Hull been present in that litigation. Finally, precluding an insured's claim under these circumstances-when the insured does not know that the suit against his or her insurer has settled and potentially does not know the scope of his or her damages-creates significant fairness concerns.[11]
¶40 In sum, we conclude it is not appropriate to apply claim preclusion under the circumstances of this case. Hull *279 was not made a party to the prior action, and his interests in advancing his own claim for injuries were not adequately represented by his insurer *116 in that prior action. Therefore, the first element of claim preclusion-an identity of the parties between the two actions-is not present. The fact that Glewwe's lawsuit ended in a settlement with Hull's insurer Unitrin does not preclude Hull from prosecuting the present action for his own damages.[12]
By the Court. -Judgment reversed and cause remanded for further proceedings.

See Glewwe v. Unitrin Auto & Home Ins. Co. , Burnett County Circuit Court case No. 2016CV68. Hull's health insurer, which had made payments to health care providers on Hull's behalf, was also named as a party in the lawsuit.

Hull averred he hired his own attorney to represent him at his deposition.

Glewwe and State Farm are jointly represented on appeal. Because their interests appear to be aligned for purposes of this appeal, we will refer to them collectively as "Glewwe" for the remainder of this opinion.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Following the initial briefing, this court held oral argument, and amicus briefs were later submitted by the Wisconsin Association for Justice and the Wisconsin Insurance Alliance.

In whole, Wis. Stat. § 632.24 states:
Any bond or policy of insurance covering liability to others for negligence makes the insurer liable, up to the amounts stated in the bond or policy, to the persons entitled to recover against the insured for the death of any person or for injury to persons or property, irrespective of whether the liability is presently established or is contingent and to become fixed or certain by final judgment against the insured.

It is not clear whether McNulty commenced a formal action prior to the settlement with Birkholz Brothers' insurer. Nonetheless, evidence in the record showed that the settlement was made without Birkholz Brothers' knowledge or participation. Birkholz v. Cheese Makers Mut. Cas. Co. , 274 Wis. 190, 191, 79 N.W.2d 665 (1956).

Indeed, when the court of appeals was presented with the controversy in A.B.C.G. Enterprises prior to the supreme court's decision in that case, it concluded that the legislative history for the permissive counterclaim statute suggested that Wm. H. Heinemann Creameries, Inc. v. Milwaukee Automobile Insurance Co. , 270 Wis. 443, 71 N.W.2d 395 (1955), was no longer good law. See A.B.C.G. Enters., Inc. v. First Bank Southeast, N.A. , 178 Wis. 2d 370, 376-77, 504 N.W.2d 382 (Ct. App. 1993), aff'd , 184 Wis. 2d 465, 515 N.W.2d 904 (1994). Our supreme court was more circumspect about the matter, merely observing that the common law compulsory counterclaim rule was the "better rule of law to apply," as opposed to the absolute permissive counterclaim rule endorsed in Heinemann . A.B.C.G. Enters. , 184 Wis. 2d at 477, 515 N.W.2d 904.

The parties dispute the degree to which the interests of the persons or entities must be aligned in order to be held in privity. Hull endorses an "absolute identity" standard, see Pasko v. City of Milwaukee , 2002 WI 33, ¶18, 252 Wis. 2d 1, 643 N.W.2d 72, while Glewwe proposes that the case law has embraced a more flexible, functional inquiry that finds privity where the interests are "sufficiently close," see Tice v. American Airlines, Inc. , 162 F.3d 966, 971 (7th Cir. 1998). Although Hull's variation of the standard seems the most consistent with prior Wisconsin case law, even applying the standard Glewwe advocates, the gap between Hull's interests and Unitrin's interests is too great.

Further, despite his apparent concerns about the scope of the settlement agreement, Glewwe pled as an affirmative defense in this action that he was not negligent and did not contribute in any way to Hull's alleged damages. Both Hull's stipulation at oral argument and Glewwe's contesting negligence in his pleading are consistent with the terms of the settlement agreement, which does not purport to address the issue of comparative fault. Rather, the release speaks to any "liability, actions, causes of action, claims and demands, for any damages, losses or injuries ...."

Additionally, we note that Glewwe's concerns regarding the purposes of the direct action statute being thwarted are implicated only when there is a colorable comparative negligence question. In the main, the direct action statute serves its purposes well in instances where there is not a genuine issue of comparative negligence, as in a case where there is only one person principally responsible for an accident.

Because we resolve this case based upon the lack of privity between Hull and his insurer, we need not address the parties' arguments regarding the other elements of claim preclusion, or whether a favorable judgment in this action would nullify the outcome of the earlier litigation or impair rights established in that action. See Turner v. Taylor , 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (observing that this court need not address all issues raised by the parties if one is dispositive).